IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2008 AUG 22 PM 3:55
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
       DEPUTY

| | |
|---|---|
| THOMSON REUTERS (TAX & ACCOUNTING) INC. § § § PLAINTIFF § § vs. § § STEVE LAAS, § MICHAEL CANNON LATEUR, § KEVIN L. CONRAD and DUFF & PHELPS § § DEFENDANTS § | CASE NO _____ A08CA 632LY |

## PLAINTIFF'S COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Thomson Reuters (Tax & Accounting) Inc. (sometimes referred to as "Plaintiff" and/or "Thomson") submits this Complaint and Request for Injunctive Relief against Defendants Steve Laas ("Laas"), Michael Cannon Lateur ("Lateur"), Kevin L. Conrad ("Conrad") (collectively referred to as the "Individual Defendants") and Duff & Phelps ("D&P"),[1] and in support thereof, states as follows:

### I. PARTIES

1. Plaintiff Thomson is a consultation firm that operates an office in Austin which provides a combination of tax services including, in relevant part, tax accounting relating to property taxes.

2. Defendant Steve Laas is an individual who is a citizen and resident of the State of Texas, and may be served with process at 11121 Savin Hill Lane, Austin, Texas 78739.

---

[1] In addition, Plaintiff wishes to point out to the Court that pursuant to Local Rule CV-65 of United States District Court for the Western District of Texas, Plaintiff is filing concurrently with this Complaint, a separate Application for Temporary Restraining Order and Preliminary Injunction against Defendants.

3. Defendant Michael Cannon Lateur is an individual who is a citizen and resident of the State of Texas, and may be served at 12020 Cherisse, Austin, Texas 78739.

4. Defendant Kevin L. Conrad is an individual who is a citizen and resident of the State of Texas, and may be served at 11913 Bryony Drive, Austin, Texas 78739.

5. Defendant Duff & Phelps is a Foreign Limited Liability Company (LLC) that is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New York. This Defendant may be served through its registered agent, CT Corporation, 350 North St. Paul Street, Dallas, Texas 75201.

6. Defendants Laas, Lateur and Conrad are former Thomson employees that recently terminated their employment with Thomson and were on information an belief hired by Defendant D&P prior to the termination of their employment with Thomson.

## II. VENUE

7. Venue is proper in the Western District of Texas because:

   a. the Defendants reside in the Western District of Texas; and

   b. a substantial part of the events or actions giving rise to the claim occurred in this District.

## III. JURISDICTION

8. The Court has jurisdiction over the controversy pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1030(a)(5) *et seq.*

## IV. FACTUAL BACKGROUND

A. **Employment Histories and Confidentiality Obligations to Thomson**

9. Laas became employed as a Senior Manager at Deloitte in or about February 13, 2002 and was later promoted to the position of Director and Supervisor.

10. Conrad and Lateur became employed as consultants with Deloitte in 2004 and 2005, respectively.

11. In or about August 2007, Thomson entered into an agreement to purchase a portion of Deloitte's business operations, including the group that the Individual Defendants worked for at Deloitte.

    a. At the inception of his employment with Deloitte, Laas executed Employment Agreement which included confidentiality and non-solicitation provisions which are similar to the provision that is at issue in this case.

    b. Likewise, when Conrad and Lateur were hired by Deloitte they both signed Employment Agreements which included these same confidentiality and non-solicitation provisions.

    b. Section 8 of the Employment Agreements provide, in pertinent part, that the provisions of the Employment Agreement inure to the benefit of the employees' successors and assigns, just as the provisions inure to the benefit of Deloitte's successors and assigns. Thomson is the successor and/or assign of the Employment Agreements.

12. Laas also executed a letter agreement, dated September 24, 2007, to become a Director, Property Tax Service for Thomson (the "Confidentiality and Non-Solicitation Agreement"). As part of that agreement, Laas indicated that he understood and agreed, in pertinent part, to the following conditions:

    a. Your agreement, by accepting this offer letter, to the following:

        (i) You agree that Deloitte Tax LLP was engaged and the Company [Thomson] is engaged in the <u>highly competitive business</u> of providing Property Tax Compliance and Valuation Services, which has required and continues to require the expenditure of substantial amounts of money and the use of skills developed over long periods of time. As a result of these investments of money, skill and time, the Company [Thomson] has developed and will continue to develop certain valuable trade secrets and <u>confidential information that are unique to the Company's business and the disclosure of which would cause the Company great and irreparable harm</u>. These investments also give the Company

[Thomson] a competitive advantage over companies that have not made comparable investments, and that otherwise have not been as successful as the Company in developing their businesses. Solely by virtue of your employment with Deloitte Tax LLP and the Company [Thomson], you have and will become privy to the Company's trade secrets and confidential information and will become intertwined with the Company's goodwill. **It would be unfair for you to exploit the information and goodwill you obtained during and as a result of your employment by Deloitte LLP and the Company [Thomson].**

(ii) During your employment with the Company [Thomson], and for one year following the conclusion of that employment for any reason, **you will not, directly or indirectly, individually or through an entity,** as an owner, part owner, partner, <u>employee</u>, agent or otherwise: **solicit, encourage, hire or make arrangements with any employee of the Company to join you in any business venture, to work for any employer or entity other than the Company, or to terminate his or her employment with the Company.**

(iii) **During your employment with the Company [Thomson], and for one year following the conclusion of that employment for any reason, you will not, directly or indirectly, individually or through an entity,** as an owner, part owner, partner, <u>employee</u>, agent or otherwise: **solicit, accept business from, contact, call upon, communicate with or attempt to communicate with any client, former client or prospective client you came to know during and as a result of your employment by, or association with, Deloitte Tax LLP, or the Company, or for which or for whom you perform services while employed by the Company.** For the purposes of this paragraph, "contact" means any interaction whatsoever between you and the client, former client or prospective client which takes place to further a business relationship.

(emphasis added).

13.  Laas and his Work Group also executed a Thomson Confidential Information and Invention Assignment Agreement ("Thomson Confidentiality Agreement") which defined "Confidential Information" as including "some of the Company's most valuable assets," such as: trade secrets, pricing policies, business plans and outlooks; brand formulations; nonpublic

financial results; new product developments or plans; client lists; author or consultant contracts, subscription lists; software or computer programs; merger, acquisition or divestiture plans; and personnel acquisition plans or major management changes.

    a.    The list of clients served by Laas and/or his Work Group is not generally known to the public.

    b.    In providing tax services, Thomson's clients provide a great deal of information to Thomson's tax specialists that is non-public and highly confidential.

    c.    Thomson, in turn, uses this Confidential Information to formulate tax strategies, respond to client-specific tax issues and works closely with each client to understand its operations and thereby represent each client effectively on tax matters.

    d.    Little, if any of this information is public nor it is generally known to the public.

    e.    Similarly, Thomson markets existing and potential clients and disclosed its marketing goals, targets and strategies to marketing existing and potential clients to Laas and/or his Work Group.

    f.    The Confidential Information has economic value, is not generally known to the public, and will provide a competitive advantage to D&P and the Individual Defendants.

    g.    Thomson has taken and continues to take reasonable steps to protect the Confidential Information including, among other things, requiring employees to execute confidentiality agreements, implementing confidentiality and security policies on client information, requiring that access to electronic information be password protected and that physical access to its premises and information is limited to its employees.

14.    Laas and his Work Group also executed Thomson's Code of Business Conduct and Ethics. The Code of Business Conduct and Ethics provides strict rules and guidelines regarding conflict of interest, membership on the board of directors of other companies, use of computer information systems, protection of nonpublic information about Thomson as well as protection of nonpublic information about clients and others.

### B. Laas Gives Notice that He is Leaving Thomson to Join D&P and Other Members of His Work Group Quickly Follow Suit

15. On August 6, 2008, Laas unexpectedly gave notice that he intended to leave Thomson and join D&P, a major competitor of Thomson, as a Director. In short order, three other employees who either worked in Laas' Work Group or who worked closely with Laas' group also gave notice that they intended to terminate their employment with Thomson and join D&P.

16. Laas and/or his Work Group have, through their employment at Deloitte and Thomson, developed a client list and group of clients who represent a "book" of business.

17. Thomson supported Laas and/or his Work Group's service to these clients and assisted them in marketing to continuing to expand their services to existing and new clients.

18. Thomson is informed and has good reason to believe that D&P negotiated with Laas to leave Thomson based on the economic value of his book of business.

    a. In determining whether an offer, including the amount of an offer should be made, the industry-wide practice is to value a book of business by billing and collections.

    b. Thomson is informed that Laas did not accept a position at D&P for a reduction in pay or benefits.

    c. On information and belief, Thomson contends that D&P made an offer to Laas based on his book of business; that is, the Thomson clients that Laas believed he could persuade to move with him from Thomson to D&P.

19. Thomson has good reason to believe that Laas and/or his Work Group, informed D&P that they had a duty of confidentiality as to their existing clients and that they also had a non-solicitation agreement with Thomson. Furthermore, since confidentiality and non-solicitation policies are common in the industry, D&P was clearly on notice that its "raid" of

Thomson employees would likely interfere with and potentially violate such policies. Nonetheless, D&P proceeded with conscious indifference to Thomson's rights.

20. On information and belief, Thomson contends that D&P knew of Laas' Confidentiality and Non-Solicitation Agreement with Thomson well before he was made or accepted an offer of employment from D&P.

21. On August 13, 2008, Thomson's Director of Human Services, Celeste Simon, sent a letter to Laas reminding him of his obligations under his agreements with Thomson. (Exhibit A). The letter stated in pertinent part: "We are particularly mindful of the fact that following your announcement that you are going to work at Duff & Phelps, Kevin Conrad and Michael Lateur also announced that they too are resigning and going to work at Duff & Phelps." (*See id.*).

22. A copy of this correspondence was also copied directly to D&P's General Counsel.

23. Therefore, as of on or about August 13, 2008, D&P was expressly put on notice that Laas had a Confidentiality and Non-Solicitation Agreement with Thomson and that Laas, Conrad and Lateur had "continuing obligations" to Thomson based on Thomson's Code of Business Conduct and Ethics.

24. Furthermore, on August 15, 2008, the undersigned counsel sent Edward S. Forman, D&P's General Counsel, a letter attaching Simon's earlier correspondence and asking him to call, or to set up a call, to discuss D&P's intentions with respect to its employment of Laas.

25. Although D&P finally responded to Thomson's counsel on or about August 20, 2008, the parties were unable to reach a resolution which protected Thomson's interests.

## C. The Individual Defendants Refuse or Fail to Provide Certifications That they Did Not Take or Destroy Thomson's Confidential Information.

26. Furthermore, when Thomson requested that Laas, Conrad and Lateur sign Certification agreements verifying that they did not have any of Thomson's confidential and proprietary information in their possession, the Individual Defendants refused or failed to sign the documents.

27. Travis Leopold, who also resigned to become a D&P employee along with the Individual Defendants, refused to sign a Certification stating to Celeste Simon, Director, Thompson Human Resources, and he had been instructed by D&P not to sign the Certification because they "were concerned about a possible non-compete" or words to that effect.

## D. Initial Forensic Investigation Reveals Destruction of Thomson Documents, Connection of External Hard Drives and Electronic Media That Store Large Amounts of Electronic Data.

28. Thomson's initial forensic investigation of the Individual Defendants' laptops has already revealed the following evidence:

   a. Both Conrad and Lateur connected a Toshiba External Hard Drive to their laptops. This hard drive is capable of storing 120 gigabytes of information. Lateur connected the external hard drive on August 6, 2008. Conrad connected the external hard drive on August 14, 2008.

   b. Both Conrad and Lateur connected flash drives to their respective laptops. Conrad connected a flash drive to his laptop on August 14, 2008. Lateur connected a Kingston DTE Privacy flash drive to his laptop on August 18, 2008.

   c. On July 29, 2008, Laas asked Conrad if he had bought an external hard drive because his 2002 emails were over 6 gigabytes.

   d. On July 31, 2008, Laas and Conrad used secretive language and agreed to talk by telephone (presumably to avoid detection) in discussing their employment negotiations with D&P.

   e. On August 4, 2008, Mike Lateur asked Kevin Conrad if he had finished using his DVD burner.

f.  On August 4, 2008, an external DVD-CDRW burner device (a device used to copy filed) was attached to Steve Laas' laptop computer.

g.  On August 6, 2008, an external DVD-RW burner (a device used to copy files) was attached to Mike Lateur's laptop computer.

h.  On August 6, 2008, Laas had an email exchange with Robert Herman and Tab Weaver, of D&B, about his compensation. In pertinent part, Herman told Laas: "As discussed, you do not have the revenue at this time to be a MD… What makes some sense to me is to see how much business you can bring in by the end of the year and incentive you based upon some percentage of that amount."

i.  From August 14, 2008 through the early morning hours of August 15, 2008, Conrad deleted hundreds, if not thousands of Company excel spread sheets, photographs of client property used in tax matters, and files of Thomson clients.

j.  Lateur similarly deleted a substantial number of Thomson client files in the days immediately prior to his termination from Thomson.

### V. VIOLATION OF COMPUTER FRAUD & ABUSE ACT

29. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

30. Defendants' actions violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5) *et seq.* which prohibits a person or entity from:

(a)  knowingly causing the transmission of a program, information, code or command, and as a result of such conduct, intentionally causing damage without authorization to a protected computer;

(b)  intentionally accessing a protected computer without authorization, and as a result of such conduct, recklessly causing damage; or

(c)  intentionally accessing a protected computer without authorization, and as a result of such conduct, causing damage.

31. Defendants violated these provisions by (a) intentionally accessing Thomson's protected computer without authorization; (b) knowingly causing the transmission of a program,

information, code or command without authorization; and (c) causing damage and/or recklessly and/or intentionally causing damage in excess of $5,000.00 to Thomson.

## VI. BREACH OF CONFIDENTIALITY AND/OR NON-SOLICITATION AGREEMENTS

32. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

33. The Individual Defendants executed Confidentiality Agreements with Thomson that prohibited them from copying, using, or disclosing Thomson's Confidential Information and which further required them to comply with certain requirements upon termination including returning and certifying the return of Thomson's Confidential Information and advising future employers of their ongoing obligations they owed to Thomson.

34. In addition, Laas executed a Confidentiality and Non-Solicitation Agreement with Thomson, which prohibited him from soliciting Thomson clients and soliciting and/or soliciting or encouraging Thomson employees to move to D&P for a period of at least one year following his resignation.

35. The Individual Defendants have improperly copied, used and/or disclosed Confidential Information constituting Thomson's trade secrets and/or confidential or proprietary information and have further failed to comply with the terms of the Thomson Confidentiality Agreements by refusing to honor their post termination obligations.

36. Defendant Laas has also, on information and belief, encouraged, supported, aided, abetted, and/or was acting in concert with others to solicit Thomson employees to leave their employment with Thomson.

37. Conrad and Lateur also breached Paragraph 6 of their agreement with Thomson not to solicit, attempt to solicit, or participate in the solicitation or attempt to solicit other

employees to leave Thomson's employment by soliciting, encouraging, aiding, abetting and/or acting in concert with others to solicit Thomson employees to leave their employment with Thomson.

38. The Individual Defendants' breaches of these contractual agreements has damaged, and will continue to cause damage to, Thomson, for which Thomson now seeks injunctive relief and damages.

## VII. BREACH OF COMMON LAW DUTY NOT TO DISCLOSE USE OR MISAPPROPRIATE CONFIDENTIAL INFORMATION OR TRADE SECRETS

39. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

40. The Individual Defendants have breached their common law duty not to disclose or use Thomson's Confidential Information.

41. Thomson took reasonable to steps to protect the secrecy of the Confidential Information.

42. The Confidential Information includes, but is not limited to:

   a. the identities of Thomson Clients and Prospective Clients, as defined in the Agreement (including but not limited to names, addresses, telephone numbers and/or social security numbers);

   b. account, personal, business, financial and other information pertaining to the Clients or Prospective Clients;

   c. Thomson Client or Prospective Client lists in any form;

   d. information related to the assets and obligations carried in an account by a Thomson client, a client's positions, and/or account valuation;

   e. account, personnel or financial information pertaining to current and former employees of Thomson, business; and

  f.  financial and other information pertaining to Thomson vendors and independent contractors, and any lists of employees, vendors and/or independent contractors.

43.  The Confidential Information also constitutes trade secret information, which is not generally known, cannot be readily ascertained and has commercial value to Thomson's competitors from which they can obtain a competitive advantage.

44.  On information and belief, Defendants have improperly copied, used and/or disclosed Thomson's Confidential Information with the intention of selling competing financial services for and on behalf of D&P.

45.  The Individual Defendants acquired such information in connection with their confidential and/or fiduciary relationship with Thomson and have used, and will use such information as employees of D&P to their advantage and to the detriment of Thomson.

46.  Thomson did not and does not authorize such use of its Confidential Information and trade secrets.

47.  Defendants' misappropriation of Thomson's Confidential Information and trade secrets has damaged Thomson which, on information and belief, exceeds $100,000.00, for which Thomson now sues.

### VIII. INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONS

48.  Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

49.  Thomson has certain existing and prospective client relationships, as set out above.

50.  Defendant Laas knew that he was prohibited by contract from soliciting the Thomson's customers and employees that he previously worked with for his own financial gain.

51. Likewise, Defendant D&P knew, had reason to know or, in the alternative, recklessly disregarded the fact, that Laas and the Individual Defendants had a Confidentiality and Non-Solicitation Agreement with Thomson that prohibited him from using Thomson's Confidential Information to lure away Thomson's clients to D&P and from soliciting Thomson employees.

52. Defendant Laas and, on information and belief, D&P have interfered with existing employee contractual relationships.

53. In addition, all of the Defendants have either already interfered, or are in the process of interfering, with Thomson's existing and prospective client relationships.

54. Defendants' conduct is willful, intentional and calculated to rob Thomson of client relationships that have taken substantial financial and staff resources to develop over a period of years.

55. Defendants' conduct is willful, intentional and calculated to raid Thomson's employee resources which have taken substantial financial and staff resources to develop over a period of years.

56. In the absence of injunctive relief, Thomson's investment in clients and employees will be irretrievably lost.

57. Accordingly, Thomson requests this Court impose injunctive relief and hold Defendants accountable for damages.

### IX. UNJUST ENRICHMENT

58. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

59. As set out above, Thomson has made substantial investment in the development of its employee and client relationships.

60. In the absence of injunctive relief, this investment will be lost to Defendants, who will be unjustly enriched by their improper and inequitable conduct.

61. Accordingly, Thomson requests this Court impose injunctive relief and hold Defendants accountable for damages.

## X. UNFAIR COMPETITION THROUGH MISAPPROPRIATION

62. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

63. The Individual Defendants had a common law and contractual duty of loyalty to Thomson to safeguard its confidential information both during and after their employment.

64. The Individual Defendants had a common law and contractual duty of loyalty to Thomson to refrain from soliciting other employees to leave Thomson and join competitors, including D&P.

65. The Individual Defendants breached the above duties by: (a) using confidential information acquired during their employment to solicit clients they serviced while employed by Thomson; and (b) soliciting other employees to leave Thomson's employment.

66. The Individual Defendants' breach of duties and misappropriation of Thomson information has damaged Thomson which, on information and belief, exceeds $100,000.00 for which Thomson now sues.

## XI. REQUEST FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

67. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

68.     Defendants' actions have irreparably harmed and threaten to further irreparably harm Thomson, for which there is no adequate remedy at law.  As a result of Defendants' wrongful conduct, Thomson has sustained and will continue to sustain substantial and irreparable harm. There is no remedy at law that will adequately prevent or compensate for such irreparable harm because Thomson's Confidential Information is being, and will continue to be compromised; Thomson's present and long-term business relationships with clients are being severely impaired due to the sheer number of Thomson clients the Defendants are in a position to solicit.

69.     There is a substantial likelihood that Thomson will succeed on the merits of its claims of misappropriation of trade secrets and breach of non-solicitation agreement because Defendant Laas must inevitably use Thomson's Confidential Information and trade secrets to compete for Thomson's existing clients while employed by Duff & Phelps.  In so doing, Laas has breached the provisions of his Confidentiality and Non-solicitation Agreement and has, or threatens to interfere with Thomson's prospective and/or existing client relationships.

70.     A Temporary Restraining Order and Injunction is necessary because Defendants' interference and damage to Thomson's goodwill and client relationships cannot be calculated in monetary terms.  A dollar value cannot be assigned to a corporation's loss of clientele, goodwill, and disruption of business relationships. Moreover, damages will be too difficult to quantify because it will be extremely difficult to value such a loss; Thomson should not be required to suffer the burden of that uncertainty.

71.     The harm to Thomson is greater than that suffered by Defendants as its client relationships have been disrupted and may potentially lost as a result of the Individual Defendants' breach of contractual and/or common law duties whereas the injunctive relief

requested is limited only to that relief required by Laas' contract and the common law; in other words, Defendants can compete against their former employer, but cannot solicit Thomson's clients for business, nor can they solicit other former co-employees to leave Thomson and engage in services at D&P.

72. It is in the public interest that the Court, through issuance of injunctive relief, require parties to comply with their contractual and common law duties protecting confidential information and protecting a company from interference with its employee and client relationships.

73. The actions described herein have caused and will continue to cause irreparable injury to Thomson, unless the Court grants immediate injunctive relief. Specifically, Thomson respectfully requests the Court to enter a Temporary Restraining Order ("TRO") immediately that:

    a. Restrains Defendants directly or indirectly or acting in concert with others from working on any Thomson client accounts or servicing any Duff & Phelps clients that were assigned to Defendants at any time during their employment with Thomson;

    b. Instructs Defendants to return to Thomson any originals and all copies of documents (electronic or otherwise) that are proprietary, confidential, and/or trade secret information, including information related to Thomson clients, manuals procedures and/or handbooks, that Defendant obtained or was provided during his employment with Thomson;

    c. Restrains Defendants directly or indirectly, or acting in concert with others from using any proprietary, confidential, and/or trade secret information, including information concerning Thomson clients that Defendant obtained, learned, or was made aware of during their employment with Thomson;

    d. Restrains Defendants, directly or indirectly, or acting in concert with others from contacting any Thomson clients who were serviced by Defendant during their employment with Thomson or prospective clients which Thomson planned to solicit for business and whose identities became known to defendant while they were employed by Thomson;

e. Restrains Defendants, directly or indirectly, or acting in concert with others, from communicating or continuing to communicate by any method with Thomson clients regarding solicitation of their business and/or transferring any Thomson client account to Duff & Phelps or anyone else;

f. Restrains Defendants from destroying all Thomson documents and any documents that have been developed and derived from Thomson confidential and proprietary information;

g. Requires Defendants to turn over all external hard drives, flash drives, memory cards or similar devices that store electronic information to Thomson within twenty four hours of entry of this TRO, including but not limited to all computers or other devices capable of storing electronic information located at their residences;

h. Thomson shall promptly make forensic copies of the devices referred to in Subparagraph g above and provide a copy to counsel for the parties;

i. Restrains Defendants from accepting any business from any Thomson Clients;

j. Restrains Defendants Laas, Lateur, and Conrad, directly or indirectly, or acting with others, from soliciting and/or encouraging Thomson employees to leave or make arrangements to leave Thomson's employment;

k. Cites Defendants to appear and show cause and that upon such hearing, a Preliminary Injunction be issued enjoining Defendants according to the terms set forth herein;

l. Orders Defendants to return to Thomson all proprietary, confidential, and trade secret information belonging to Thomson whether in electronic form or in hard copy form; and

74. Unless and until Thomson obtains the injunctive relief sought herein, Thomson will continue to be irreparably harmed.

75. Thomson respectfully requests that it be allowed to provide a nominal amount of security, if any, for payment of costs and damages as may be required. Thomson recommends a bond no greater than $1,000.00, but is willing to post a bond the Court deems appropriate.

76. For the reasons stated herein, Thomson requests that a Preliminary Injunction be entered after the Temporary Restraining Order and a Show Cause Hearing to enjoin Defendants from undertaking the conduct described herein, and that a Permanent Injunction be entered upon final trial of this matter.

## XII. EXEMPLARY AND/OR PUNITIVE DAMAGES

77. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

78. Defendants' wrongful conduct is willful, wanton, malicious, and done with the intent of causing injury to Thomson. Accordingly, Thomson is entitled to exemplary damages and/or punitive damages from Defendants.

## XIII. ATTORNEY'S FEES

79. Thomson incorporates and realleges the matters set forth in each of the proceeding paragraphs.

80. As a result of the conduct described herein, Thomson has been required to retain the services of the undersigned attorneys to bring the present action and has agreed to pay them a reasonable attorneys' fee for their services. Pursuant to applicable state and/or federal law Thomson also seeks judgment against Defendants for Thomson's reasonable and necessary attorneys' fees incurred in connection with this lawsuit.

## XIV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court enter an order that immediately:

    a. Restrains Defendants directly or indirectly or acting in concert with others from working on any Thomson client accounts or servicing any Duff & Phelps clients that were assigned to Defendants at any time during their employment with Thomson;

b. Instructs Defendants to return to Thomson any originals and all copies of documents (electronic or otherwise) that are proprietary, confidential, and/or trade secret information, including information related to Thomson clients, manuals procedures and/or handbooks, that Defendant obtained or was provided during his employment with Thomson;

c. Restrains Defendants directly or indirectly, or acting in concert with others from using any proprietary, confidential, and/or trade secret information, including information concerning Thomson clients that Defendant obtained, learned, or was made aware of during their employment with Thomson;

d. Restrains Defendants, directly or indirectly, or acting in concert with others from contacting any Thomson clients who were serviced by Defendant during their employment with Thomson or prospective clients which Thomson planned to solicit for business and whose identities became known to defendant while they were employed by Thomson;

e. Restrains Defendants, directly or indirectly, or acting in concert with others, from communicating or continuing to communicate by any method with Thomson clients regarding solicitation of their business and/or transferring any Thomson client account to Duff & Phelps or anyone else;

f. Restrains Defendants from destroying all Thomson documents and any documents that have been developed and derived from Thomson confidential and proprietary information;

g. Requires Defendants to turn over all external hard drives, flash drives, memory cards or similar devices that store electronic information to Thomson within twenty four hours of entry of entry of a TRO or other order of the Court, including but not limited to all computers or other devices capable of storing electronic information located at their residences;

h. Thomson shall promptly make forensic copies of the devices referred to in Subparagraph g above and provide a copy to counsel for the parties;

i. Restrains Defendants from accepting any business from any Thomson Clients;

j. Restrains Defendants Laas, Lateur, and Conrad, directly or indirectly, or acting with others, from soliciting and/or encouraging Thomson employees to leave or make arrangements to leave Thomson's employment;

k. Orders Defendants to return to Thomson all proprietary, confidential, and trade secret information belonging to Thomson whether in electronic form or in hard copy form; and

l. To destroy such Thomson data as directed by the Court; and

m. Enters judgment against Defendants along with an assessment of (i) actual damages, (ii) exemplary and/or punitive damages, (iii) prejudgment and post-judgment interest as provided by law, (iv) attorneys' fees, costs, and expenses, (v) court costs and other taxable expenses allowed by law, and (vi) for such other and further relief, at law or in equity, to which Thomson may show itself justly entitled.

Respectfully submitted,

Stephen R. Cochell
State Bar No. 24044255
Charles H. Wilson
Federal Bar No. 34581
State Bar No. 00797678
Michelle R. Moore
State Bar No. 24025544
EPSTEIN BECKER GREEN
WICKLIFF & HALL, P.C.
1000 Louisiana, Suite 5400
Houston, Texas 77002
713-750-3100 Telephone
713-750-3101 Facsimile

**ATTORNEYS FOR PLAINTIFF**